UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
 )
 ) CRIMINAL ACTION
 v. )
 ) NO. 04-10299-PBS
BENITO GRULLON, )
 a.k.a. "Quico" )

### UNITED STATES' SUPPLEMENTAL PRETRIAL MEMORANDUM

In the government's trial brief (Doc. 602) filed on January 8, 2007, the government disclosed to the court that tape recording related to a controlled purchase of cocaine from the defendant on July 30, 2003 had been lost and that the law enforcement officer responsible for maintaining custody and control over those recordings had failed to follow proper chain of custody procedures. The instant memorandum provides the court with additional information that the government learned on Friday, January 12 and Monday, January 15, 2007 about the status of this evidence.

## I.  RELEVANT FACTS

**A.  Additional Tape Recording of Phone Call on July 30, 2003**

On Friday, January 12, 2007, Det. Edwards delivered to undersigned counsel a tape recording marked "copy" that contains two recorded phone calls between the DEA CS, Fernando Soto, and Hector Munoz on July 30, 2003. During these two calls, which occur before the controlled purchase transaction that same day, Soto arranged to meet Munoz and Grullon at 2:30. During one of the call, Munoz told Soto that "he" (referring to Benito Grullon) would be there at around 2:30. The government provided a copy of this tape to defense counsel on Friday, January

1

12, 2007, hours after receiving the tape from Det. Edwards.

The original tape recording was never entered into non-drug evidence and is lost.  No DEA 7a chain of custody report was ever created. Furthermore, the tape is marked "N-2" and is not referred to in any report.  Instead, the DEA 6 report written about the transaction entitled *Purchase of Exhibit 1 on 7-30-03* simply states that:

> CS placed a phone call to MUNOZ at MUNOZ's residence in Lynn, Massachusetts.  CS placed the call to 781-598-1829 in the presence of TFA Gallarelli and TFA Edwards.
>
> <u>See</u> Attachment No. 1

In addition, as described in the government's first pretrial memorandum, Det. Edwards also marked another recording "N-2" which was a recorded phone call on August 8, 2003.  Det. Edwards lost this tape, never submitted the tape into evidence, and the working copies of the recording are blank.

The government will <u>not</u> seek to introduce this recorded phone call in the government's case-in-chief.  The government, however, may seek to introduce this tape in rebuttal.

**B.    Additional Handwritten Notes of DEA CS Fernando Soto:**

In the government's first pretrial memorandum, the government indicated that Soto had created nearly verbatim English transcriptions of the recorded phone calls that he had made with Munoz and Grullon.  During an interview with Soto on Monday, January 15, 2007, Soto informed government prosecutors that before providing the DEA the English handwritten transcriptions of the recorded phone calls, Soto typically wrote out Spanish transcriptions.  Soto's wife then translated his transcriptions into English and wrote them out by hand.  Soto stated that he provided both sets of handwritten transcriptions to the DEA.

Soto signed some these English handwritten transcriptions in the presence of Det. Edwards.  For example, on October 24, 2003, Soto signed a two page handwritten English transcription of three calls which took place on September 1 and September 2, 2003. <u>See</u> Attachment No. 2.  These notes corresponded to the tape recording which is government's exhibit no. 2.  Exhibit no. 2 was provided to defense counsel on December 13, 2006 along with a full Spanish/English transcript of the call.

Government prosecutors have reviewed Soto's DEA Cooperating Source file on three separate occasions, fist in December 2006 and twice in January 2007.  For more than five years, Soto worked with Det. Peter Murphy of the Brookline Police Department (who was assigned to the DEA as a Task Force Agent).  When Det. Murphy retired in 2003, the responsibility for overseeing Soto was transferred to Det. Edwards.  The only case in Det. Edwards was directly involved with Soto was the Grullon investigation.  After the Grullon case, Soto discontinued working with the DEA pursuant to his previous intentions to leave the area.

A review of Soto's CS file indicate that there both Spanish and English transcriptions of tapes during the time that Soto worked with Det. Murphy.  However, for the Grullon investigation, the only handwritten transcripts that appear in the file are in English.

## II.  SUMMARY OF APPLICABLE LAW

**A.    Chain of Custody of Tape Recorded Evidence.**

Under the Federal Rules of Evidence, authentication is a condition precedent to admissibility.  <u>See</u> Fed.R.Evid. 901(a) (noting that for authentication purposes, sufficient evidence is required "to support a finding that the matter in question is what its proponent claims").   "The district court must determine if there is a reasonable probability that the evidence

3

is what it is purported to be." United States v. Barrow, 448 F.3d 37, 42 (1st Cir. 2006)(internal

quotations and citations omitted). Once this is established, "[a] possible defect in the chain of

custody for a certain piece of evidence factors into the weight given to the evidence rather than

its admissibility." United States v. Scharon, 187 F.3d 17, 22 (1st Cir.1999); United States v.

Rodriguez, 162 F.3d 135, 144 (1st Cir. 1998)("A possible defect in the chain of custody for a

certain piece of evidence factors into the weight given to the evidence rather than its

admissibility."); United States v. Abreu, 952 F.2d 1458 (1st Cir.1992)("[e]ven though there may

be gaps in the chain of custody for a certain piece of evidence, such gaps factor into the weight

given to the evidence rather than its admissibility.").  "[T]he prosecution's chain-of-custody

evidence must be adequate-not infallible." United States v. Ladd, 885 F.2d 954, 957 (1st

Cir.1989).

In United States v. Abreu, 952 F.2d 1458 (1st Cir.1992), the First Circuit set forth the

standards to be applied by the district court in cases where the chain of custody of evidence is a

contested issue:

> In determining whether the evidence is admissible, the trial court must conclude that it
> was reasonably probable that the evidence had not been altered since the occurrence of
> the crime. *The evidence in question is properly admitted if it is readily identifiable by a
> unique feature or other identifying mark.* On the other hand, if the offered evidence is of
> the type that is not readily identifiable or is susceptible to alteration, a testimonial tracing
> of the chain of custody is necessary. The purpose of testimonial tracing is to render it
> improbable that the original item either has been exchanged with another or has been
> tampered with or contaminated.

> *Id.* at 1467 (internal quotation marks and citations omitted)(emphasis supplied).

Furthermore, "the fact that portions of the tapes are unintelligible is not necessarily an

impediment to the admission of the tapes." United States v Panzardi-Lespier, 918 F.2d 313, 318

4

(1st Cir. 1990); United States v. Bernal, 884 F.2d 1518, 1523-24 (1st Cir.1989). Instead, the standard the First Circuit applies provides "that where a recording is challenged on the grounds of inaudibility the question is whether the inaudible parts are so substantial as to make the rest more misleading than helpful." Bernal, 884 F.2d at 1523 (internal quotations and citations omitted).

Here, government's exhibit no. 2 is a recorded phone call that is unique and readably identifiable. It is unique because government witness Fernando Soto, the participant in the conversation, will be able to easily identify the call because he made it. Furthermore, while the original has been lost, Fed. R. Evid. 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Furthermore, Soto prepared notes of the conversation before the original was lost that make clear that there is no audio from the original that is missing on the copy.

**B.    Destroyed and Missing Evidence.**

Although the government has a duty to disclose exculpatory evidence, the government is required to preserve exculpatory evidence only in certain circumstances. In California v. Trombetta, the Supreme Court held that the Constitution requires the government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984)(footnote omitted). Such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see United States v. Dumas, 207 F.3d 11, 17 (1st Cir. 2000)(no due

process violation by government's destruction of agent's witness interview notes because remaining notes contained all relevant evidence).  Similarly, in Arizona v. Youngblood, the Supreme Court held that in cases involving only potentially exculpatory evidence, "[u]nless a criminal defendant can show bad faith on part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

The First Circuit's decision in United States v. Femia, 9 F.3d 990 (1st Cir. 1993) is directly on point.  In Femia, the district court suppressed the testimony of the government's principal cooperating witness when the court found the government committed "gross negligence" by destroying twenty-three tape recordings the main witness created during the drug investigation.  Id. at 992.  After the tapes were destroyed, the government was able to salvage six copies that been provided to other defendants in this same case and transcripts that been previously prepared before the destruction.  The First Circuit reversed the district court because there had been no finding of bad faith: "the district court clearly erred in finding a due process violation because these tapes were destroyed due to the government's gross negligence, not bad faith."  Id. at 995; see also United States v. Gallant, 25 F.3d 36, 38-39 (1st Cir. 1994)(per curiam)(no due process violation by destruction of marijuana plants because no evidence of bad faith)..

Here, the testimony at trial will demonstrate that the mishandling of evidence was neither malicious or  pervasive, but instead limited to one law enforcement officer.  In addition, for the recordings that have been lost (N-1 the body-wire recording on 7/30/03; N-2 and N-3, the phone calls on 8/6 and 8/8/03), the government has provided defendant with handwritten notes of these

6

phones calls and a detailed report about the controlled purchase. See United States v. Innamorati, 996 F.2d 456, 483 (1st Cir. 1993)(no error when government failed to preserve transcript of government interview with defendant because interview was essentially preserved by grand jury testimony).

### III.  DISCOVERY WITH REGARDS TO WIRETAP EVIDENCE

_____At the pretrial conference on January 10, 2007, counsel for defendant indicated that he had recently received discovery regarding wiretap calls where government witness Manuel Germosen referred to defendant Grullon as "Benito."  In particular, counsel for defendant indicated that the CD which undersigned counsel provided to him - and which undersigned counsel indicated contained 'all the intercepted calls in which defendant Grullon was intercepted or referred to" - did not include these call where Germosen referred to Grullon as "Benito," specifically Call No. 213 (Government Exhibit 23A).

The CD to which defense counsel is referring was first disclosed in February 2005.  On February 16, 2005, the government filed a letter with Court (Doc. 73-2) describing the process by which the government was able to provided this particularized wiretap discovery.  While undersigned counsel believes that current counsel for defendant was provided this CD on August 9, 2006 (which contained the line-sheets, though not the audio, for 101 calls, including Call No. 213), undersigned counsel also did not provide a letter to defense counsel describing this discovery which could have eliminated any confusion about the exact items of discovery which were disclosed.

Conclusion

The government respectfully submits this supplemental pretrial memorandum for the

Court's consideration.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney


By:        /s/ Neil J. Gallagher, Jr.
           Neil J. Gallagher, Jr.
           Assistant U.S. Attorneys
           One Courthouse Way
           Boston, MA


Date: January 15, 2007



Certificate of Service

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and mailed to all those not participating in ECF.

/s/ Neil J. Gallagher, Jr.
Neil J. Gallagher, Jr.