UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | NO. 04-10299-PBS |
| BENITO GRULLON, | ) | |
| a.k.a. "Quico" | ) | |

UNITED STATES' MEMORANDUM REGARDING DEFENDANT'S
PROPOSED JURY INSTRUCTION FOR MULTIPLE CONSPIRACY DEFENSE

_____The United States respectfully submits that defendant is not entitled to a jury instruction to support a multiple conspiracy defense.  Under First Circuit caselaw, the fact that other members of the conspiracy did not participate in the July 30, 2003 sale of cocaine; and that Germosen and Grullon changed roles in the conspiracy is immaterial.

## I.   The Law of Multiple Conspiracies

A defendant who raises a "multiple conspiracy" defense argues that the evidence shows that he was involved only in a lesser conspiracy, not the larger conspiracy charged in the indictment.  See United States v. Perez-Ruiz, 353 F.3d 1, 7 (1st Cir. 2003); United States v. Soto-Beniquez, 356 F.3d 1, 18 (1st Cir. 2003).  There are three factors to determine if the evidence supports a single conspiracy: (1) a common goal, (2) inter-dependence among the participants, and (3) overlap among the participants.  United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999).  Ultimately, however, the relevant question is

1

whether, under the totality of the circumstances, there is sufficient factual support for a single conspiracy. Id. at 696; United States v. Drougas, 748 F.2d 8, 17 (1st Cir.1984).

**A.    Common Goal**

"A jury's finding of a single conspiracy will be supported if the evidence demonstrates that all of the alleged co-conspirators directed their efforts towards the accomplishment of a common goal or overall plan." United States v. Escobar-Figueroa, 454 F.3d 40, 48 (1st Cir. 2006)(citing Drougas, 748 F.2d at 17). In this regard, it is well-established that the goal of selling cocaine for profit satisfies the common goal requirement. Soto-Beniquez, 356 F.3d at 18; Portela 167 F.3d at 695. That each defendant had an interest in furthering the distribution of cocaine is sufficient evidence that he shared a common goal with the other participants. See United States v. Gaviria, 116 F.3d 1498, 1533 (D.C.Cir.1997).

Here, without question, defendant Grullon shared the common goal with his co-conspirators which was the object of the charged conspiracy: the distribution of cocaine for profit. The fact that Manuel Germosen did not participate in the distribution of cocaine on July 30, 2003 is immaterial because of the common goal they ultimately shared and strived toward. See United States v. Vega-Figueroa, 234 F.3d 744, 753 (1st Cir.2000); United States v. Mena-Robles, 4 F.3d 1026, 1033 (1st Cir.1993)("[t]he fact that

every defendant did not participate in every transaction necessary to fulfill the aim of their agreement does not transform a continuing plan into multiple conspiracies.").

**B.    Interdependence Among Participants:**

Establishing "interdependence" among the participants is established when one aspect of the scheme is necessary or advantageous to the success of another aspect of the scheme. Portela, 167 F.3d at 695.  The focus here is on the defendant's state of mind, not his mere participation in a branch of the venture; he must think that the aspects of the venture are interdependent.  See United States v. Glenn, 828 F.2d 855, 857-59 (1st Cir.1987) . "[K]nown interdependence ··· makes it reasonable to speak of a tacit understanding between the distributor and others upon whose unlawful acts the distributor knows his own success likely depends." Id. at 857-58.  "Put another way, evidence of an individual participant's understanding of the interdependence of the co-conspirators' activities is evidence-often the best evidence-of tacit agreement between the individual and his co-conspirators."  Portela, 167 F.3d at 695.

In this case, there was clear interdependence among Grullon and other members of the conspiracy.  Early on in the conspiracy, from 2002 to 2003, Grullon's ability to make money selling cocaine was dependent on Germosen's ability to obtain cocaine to provide cocaine to Grullon. See United States v. Glenn, 828 F.2d

3

855, 857 (1st Cir.1987) ("A defendant drug distributor may expressly agree with his immediate supplier that he will sell any drugs provided to him, but he may tacitly agree with a more distant supplier, say a smuggler, that each will work for the success of the whole drug operation."). Germosen's ability to make money selling cocaine was dependent on the ability of his whole-sale cocaine "clients," including defendant Grullon, to sell the cocaine that Germosen provided. This is particularly true with Grullon because Germosen "fronted" Grullon the cocaine. If Grullon was unable to sell the cocaine, Germosen would not get paid.

Later, between 2003 and 2004, Grullon's ability to make money selling cocaine was dependent on both Manuel and Cristian Germosen's ability to pay Grullon for the cocaine Grullon supplied them. Grullon's ability to get paid was also dependent on Germosen's ability to ensure that his brother, Cristian, pay Grullon for the debts that Cristian owed to Grullon.

Furthermore, the fact that Germosen and Grullon's roles in the conspiracy changed as the conspiracy entered a new phase while Andres Martinez, the main source of the cocaine, was in Mexico is also immaterial. See United States v. Haslip, 416 F.3d 733, 737 (8th Cir. 2005)("That co-conspirators may change roles throughout the pendency of a conspiracy or even depart from the conspiracy which may signal only that the single conspiracy has

moved to a new phase, and a conspiracy may have multiple and varied phases."). "A single conspiracy can exist notwithstanding the fact that the participants or their roles change or that multiple groups performing separate crimes or acts exist." United States v. Sdoulam, 398 F.3d 981, 991 (8th Cir. 2005)(internal citations and quotations omitted). "A single conspiracy is not converted to multiple conspiracies simply because it can be subdivided, or because there are changes in the individuals involved or the roles that they play in the conspiracy." United States v. Walls, 293 F.3d 959, 967 (6th Cir. 2002). "As long as the conspiracy continues toward its goal to achieve a common objective, it remains a single conspiracy despite the fact that participants may change or perform different roles or functions at different times." United States v. Marshall, 985 F.2d 901, 907 (7th Cir.1993).

## C. Overlap

Finally, the "overlap" requirement can be satisfied by the pervasive involvement of a single "core conspirator," a central hub character. Portela, 167 F.3d at 696. Here that central hub character was both Manuel Germosen and defendant Grullon. Moreover, "[a] single conspiracy can exist even where there is no personal contact among some of the individual participants; the fact that every defendant did not participate in every transaction necessary to fulfill the common aim does not

transform a single ongoing scheme into multiple conspiracies."

<u>United States v. Escobar-Figueroa</u>, 454 F.3d 40, 49 (1st Cir.

2006).

II.  <u>Conclusion</u>

In this case, defendant is not entitled to a multiple

conspiracy instruction because the evidence has shown that the

there was only one overall conspiracy to distribute cocaine.  The

First Circuit Pattern Jury Instruction which requires the jury to

find "the agreement specified in the indictment, and not some

other agreement or agreements, existed between the defendant at

least one other person to distribute cocaine" is sufficient.  As

stated above, the fact that Germosen did not participate in the

July 30, 2003 sale of cocaine; and that Germosen and Grullon

changed roles in the conspiracy is immaterial and does not create

another conspiracy.

                    Respectfully submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney


          By:     <u>/s/ Neil J. Gallagher, Jr. </u>
                    Neil J. Gallagher, Jr.
                    Sharron Kearney
                    Assistant U.S. Attorneys
                    One Courthouse Way
                    Boston, MA


Date: January 22, 2007

6

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and mailed to all those not participating in ECF.

/s/ Neil J. Gallagher, Jr.
Neil J. Gallagher, Jr.

7