UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10299-PBS |
| | ) | |
| BENITO GRULLON | ) | |

**AFFIDAVIT IN SUPPORT OF DEFENDANT'S
MOTION FOR MISTRIAL**

I, Eduardo Masferrer, swear that the following is true to the best of my knowledge and belief:

1. I am the attorney for the defendant, Benito Grullon, in the above named action.

2. On January 16, 2007, a jury trial began for the defendant, Benito Grullon.

3. On January 25, 2007, Mr. Grullon was found guilty by a jury of a single count of conspiracy to distribute cocaine.

4. On January 25, 2007, after the jurors had been released, a document was found in the jury room by the Courtroom Clerk, Robert Alba. The Court (Saris, J.) was informed and a copy of the document was faxed to my office.

5. The document was a printout from a webpage and personalized with a message and signature. ("Nice to have worked together – Take Care – God Bless – Dancing Doreen") (Exhibit A)

6. The printout from the webpage was entitled "Sharks and Lawyers – A Comparative Study" (the "webpage") and was printed from the internet on January 23, 2007, as indicated by the access information at the bottom of the page. (Exhibit A)

7. The webpage was a satirical comparative study between sharks and lawyers that contains several references that are offensive and insulting towards attorneys, specifically

attorneys in private practice, as it infers that lawyers compromise their integrity and or morals for the "right price."

8. The website where the webpage was printed from is www.jamesfuqua.com. (Exhibit B)

9. This website as stated on its homepage, is hosted by James Fuqua, a one time student at the University of Texas Law School. (Exhibit C)

10. A sub page of the website accessible through a link on the homepage, James Fuqua's Law Jokes, where the webpage was found warns web browsers that there might be some offensive humor on the webpage. (Exhibit D)

11. Aside from the webpage printed by the juror, on this webpage there was a significant amount of offensive material about lawyers and the legal profession. (Exhibit E)

12. Another sub page accessible through a link on the homepage, James Fuqua's Legal Sources Links, includes links to several legal sources which included, Findlaw, Lexis and US Supreme Court Cases. (Exhibit F)

13. Upon empanelment, the Court instructed the jury not to discuss the case with anyone or attempt to conduct any research on their own, specifically making a reference to avoid internet browsing.

14. It is unclear how many jurors read or saw the webpage prior to the conclusion of deliberation, however, it is clearly evident that at least one juror was browsing the internet and accessing a website with legal information and offensive demeaning material during the course of the trial and prior to the conclusion of deliberation.

15. Browsing the web and searching a website with legal sources and offensive comments in reference to attorneys in private practice, prior to the conclusion of trial, is misconduct

because it violated the Court's instruction and had the capacity to taint the jury deliberations.

16. Juror misconduct violates the defendant's Sixth Amendment right to a fair trial by an impartial jury and should be examined by the Court to determine its prejudicial effect on the defendant's right.

17. The webpage printed and arguably shared with other jurors, made statements such as "lawyers, too, are spineless – as willing to argue one side of a case as the other. For the right price," and "Lawyers, too, will swallow anything – even their pride – as increasing numbers of lawyer hopefuls trudge to law school each year for three years of browbeating in hopes of financing their Porches." Statements such as these are prejudicial towards the defendant because they are negative judgments that jurors could attribute to his attorney.

18. Given that a criminal defense attorney is hired or, as in this case, appointed to an individual in exchange for a fee; therefore, jurors can infer that the defendant's attorney might be willing to compromise the truth in exchange for receiving his fee based on the context of the webpage.

19. Such inferences by any or all jurors can taint the deliberation process and violate the defendant's right to trial by an impartial jury.

Signed to under the pains and penalties of perjury, this day February 18, 2007.

                                              _/s "Eduardo Masferrer"____
                                              Eduardo Masferrer