**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **CRIMINAL ACTION** |
| v. ) | |
| ) | **NO. 04-10299-PBS** |
| **BENTIO GRULLON** ) | |
| _____ ) | |

### GOVERNMENT RESPONSE TO DEFENDANT'S MOTION FOR MISTRIAL

The United States hereby submits this memorandum in opposition to defendant Benito Grullon's ("GRULLON") motion to for Mistrial.

### RELEVANT BACKGROUND

On January 16, 2007, before the Honorable Patti B. Saris, a jury trial commenced against the defendant who was charged with one count of conspiracy to distribute a controlled substance in violation of Title 18 U.S.C. § 841. On January 25, 2007, the jury returned a guilty verdict against the defendant and they were released by the Court shortly thereafter. Following their release, Robert Alba, a courtroom clerk, found a document in the jury room. Mr. Alba informed the Court of the document and copies were then forwarded to both the government and the defense (attached hereto as "Exhibit #1").[1] The document is a printout from a webpage which appears to be a "law jokes" site and it contains a joke entitled "Sharks and Lawyers–A Comparative Study." The document also has a hand written note which states, "Nice to have worked together-Take Care- God Bless-Dancing Doreen." The substance of the joke is a rather humorous comparison between lawyers and sharks

---

[1] The defense included a copy of the joke as "Exhibit A" in his motion for a mistrial, however there appear to be marks on it (ie: stars and an arrow) which were not made by the juror. For the Court's information, there was no emphasis made by the juror as to any particular text of the joke and the copy submitted as "Exhibit #1" by the government is as it was received from Mr. Alba.

which touched upon the age-old and widespread theory that lawyers, in general, are not to be trusted. The defendant claims that this document contains statements which are prejudicial toward the defendant because they are negative judgments that could be attributed to the defense attorney. If anything, this document is merely an indication of a pleasant camaraderie amongst the jurors rather than any prejudice to the defense.

## ARGUMENT

The lawyer joke that was left behind in the jury room does not constitute extraneous prejudicial information nor does its mere presence indicate any misconduct by the jury. Therefore an evidentiary hearing or any further inquiry of the jurors is unnecessary.

**F.R.E. 606(b) states:**

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

When a colorable claim of jury misconduct is alleged, the district court has broad discretion to determine the type of investigation which must be mounted. United States v. Boylan, 898 F.2d 230, 258 (1st Cir. 1990). However, the First Circuit has recognized that trial courts have a great deal of flexibility to fashion whatever procedure is appropriate "in determining whether misconduct actually occurred and, if so, whether it was prejudicial." Id. Once the facts become sufficiently clear to enable the Court to make those judgments, in the interests of "protecting jurors and their verdicts from unwarranted intrusions," no additional inquiry should be conducted. Mahoney v. Vondergritt,

938 F.2d 1490, 1491 (1st Cir. 1991). See also Tanner v. United States, 483 U.S. 107, 127, 107 S.Ct. 2739, 2751, 97 L.Ed.2d 90 (1987) ("long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry") United States v. Davis, 60 F.3d 1479, (10th Cir. 1995) (holding that evidentiary hearing unnecessary when further questioning "would have been an exercise in futility" because the allegations were already clear); United States v. Moon, 718 F.2d 1210, 1233 (2nd Cir. 1983) (when it becomes apparent that the behavior was not prejudicial, "the inquiry should end"[2]; Neron v. Tierney, 841 F.2d 1197, 1205 (1st Cir.1988) ( "courts generally 'should be hesitant[ ] to haul jurors in after they have reached a verdict ... to probe for potential instances of bias, misconduct, or extraneous influences' "); United States v. Calbas, 821 F.2d 887, 896 (2d Cir.1987) (" 'open-ended inquiry into the questions considered by the jury and into the deliberations of the jury will, if not kept under very close check, undermine the entire nature and integrity of our jury system' ") (quoting district court opinion). The reluctance to probe into jury decision-making should give way only in the face of "a showing sufficient to undergird genuine doubts about impartiality," Neron, 841 F.2d at 1202. Moreover, inquiry into the motives of individual jurors and conduct during deliberations is never permissible; any investigation must focus solely on whether the jury was exposed to external influences and, from an objective perspective, whether such influence was likely to have affected the jury's verdict. *See* Fed.R.Evid. 606(b)**;**

---

[2]There is also a significant difference in how the exercise of a court's discretion is reviewed depending on whether the allegations of extraneous information come to light during or after trial. See United States v. Bradshaw, 281 F.3d 278 (1st Cir. 2002)(noting that harmless error analysis does not fit the pre-verdict inquiry). Given the court's interest in the finality of verdicts, "it is a qualitatively a different thing to conduct a voir dire during an ongoing proceeding at which the jury is part of the adjudicative process than to recall a jury months later for that purpose." United States v. Gilsenan, 949 F.2d 90, 97 (3rd Cir 1991).

Calbas, 821 F.2d at 897; Fidler, 377 Mass. at 201, 385 N.E.2d at 517.

The Supreme Court has held that in terms of the application of this rule, the internal/external distinction depends on the nature of the allegation. Tanner, 483 U.S. at 117. In Tanner, the Court decided that allegations of alcohol and substance abuse by the jurors during lunch and in the jury room did not constitute the kind of "extraneous outside influence" that would permit a court under Rule 606(b) to conduct an inquiry into the validity of the verdict. Id. at 122.

The First Circuit held, "...that there are situations where the evidence of impropriety may be so slight or conjectural as not to support any reasonable inference of prejudicial bias or misconduct. Neron v. Tierney, 841 F.2d 1197, 1205 (1st Cir.1988). In Neron, post-verdict it was discovered that one of the jurors briefly dated the defendant's son approximately 14-15 months prior to trial. Id at 1207. During voir dire, the juror was asked if she knew any of the parties to the case which she answered in the negative. There was no evidence that the juror ever met the defendant nor that she even made the connection between the son and his defendant father. Id at 1208. The judge in that case declined to interview the juror and the Court of Appeals ultimately upheld the state court's decision. Id at 1209.

In this case, the circumstances are far less nefarious than any of the juror misconduct or prejudice allegations made in Tanner and Neron as set forth above. Here, we have a joke about lawyers left behind by a juror in the deliberation room. There is no indication whatsoever that this juror researched anything having to do with this case or any legal principles–thus there was no misconduct. Although we do not know whether this juror went looking for lawyer jokes to share with the jury or whether it was simply emailed to her, neither scenario rises to the level of misconduct which would mandate any further inquiry. Furthermore, simply because a website indicates that legal information is available, does not mean the juror took the extra step of looking

up case law or any other relevant legal principles. To make that assumption would be exactly the kind of speculation and conjecture the courts have frowned upon in the past. In this case, every morning during the course of the trial, the Court asked the jury whether they had seen anything at all in connection with this case outside of the courtroom and the jury always answered in the negative. This joke does not call into question the integrity of that answer nor should it give rise to an undue violation of the sanctity of the jury's deliberations.

Additionally, from an objective standpoint, a lawyer joke in the jury room does not automatically constitute prejudice to the defendant as alleged in the defense affidavit. The joke does not make any specific reference whatsoever to defense attorneys or prosecutors and it does not even mention criminal attorneys or defendants. The joke simply pokes fun at lawyers–a past time, which quite frankly, has become part of the fabric of our society. Few people are unfamiliar with the phrase from Shakespeare's play, Henry IV, *"The first thing we do, let's kill all the lawyers.*" Rueful and mocking, it often expresses the ordinary person's frustration with the arcana and complexity of law. Sometimes it's known that the saying comes from Shakespeare's play, but more often the saying is believed to be derived from society's general feeling of dislike or distrust toward lawyers. In today's world, courts would be hard pressed to find a jury who had never heard their fair share of "lawyer jokes." As such, there is no reasonable showing of prejudice against the defendant here which would warrant hauling these jurors back in to court for a hearing.

More to the point, the type of baseless allegations here --that the juror who brought in the lawyer joke *might* be biased against the defense attorney; that the joke *might* have biased other jurors; and that the juror *might* have researched legal issues-- comes squarely within the case law which properly recognizes that the Court should not allow such undue speculation to interfere with the finality of the juror's verdict. *See* Tanner v. United States, 483 U.S. at 127 (based on

inadmissibility of juror testimony and clear insufficiency of non-juror evidence offered by petitioner's post-verdict, evidentiary hearing unnecessary); United States v. Walsh, 75 F.3d 1, 7-8 (1st Cir. 1996)(court within discretion in not conducting any post-verdict investigation based on affidavit containing only general rhetoric and no specific allegations of misconduct); United States v. Blackburn, 446 F.2d 1089, 1091(5th Cir. 1971)("jury should not be exposed to post-verdict fishing expeditions into their mental processes with the hope that something will turn up").

## CONCLUSION

For the foregoing reasons, the Court should deny defendant's request for additional jury inquiry and deny the motion for a mistrial.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:   /s/ Sharron Kearney
       SHARRON KEARNEY
       NEIL J. GALLAGHER, JR.
       Assistant U.S. Attorneys

March 2, 2007