UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10299-PBS |
| ) | |
| BENITO GRULLON, ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

June 6, 2007

    Defendant Benito Grullon was convicted after a seven-day jury trial of conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He now moves for a mistrial after materials jokingly disparaging lawyers as "sharks" were found in the jury room after the verdict was rendered and the jurors dismissed.

    The materials at issue consisted of a single page printed from a website and inscribed by hand with the message: *Nice to have worked together -- Take Care -- God Bless -- Dancing Doreen.*"[1] The page was titled, "James Fuqua's Law Jokes; Sharks and Lawyers -- A Comparative Study," followed by several paragraphs comparing sharks to lawyers and joking, for example,

---

[1] The printout came from the website, www.jamesfuqua.com, which contains links to legal materials, cases, and law-related databases, such as Lexis Nexis. The juror testified, however, that she did not access these materials.

1

that "[s]harks, unlike most fish, have no bones . . . . Lawyers, too, are spineless -- as willing to argue one side of a case as the other. For the right price."

On May 23, 2007, I held a hearing to determine whether any extraneous prejudicial information or other outside influence was improperly brought before the jury and, if so, to evaluate any resulting prejudicial effect. Fed. R. Evid. 606(b); see, e.g., United States v. Hunnewell, 891 F.2d 955, 961 (1st Cir. 1989) (when plausible allegation of juror misconduct is made, trial court must investigate to ascertain whether the misconduct actually occurred, and if so, assess the effect). The juror who disseminated the printout, identified by her signature, testified in camera, in the presence of counsel and defendant, and consistent with Rule 606(b)'s limitations on juror post-verdict testimony. She said that the printout was distributed along with homemade chocolate-covered pretzels in a "goodie bag" of sorts for her fellow jurors just prior to the dismissal of the alternates and the beginning of deliberations. She explained that she wanted to include something lighthearted to go along with her gifts. Each juror received a copy of the materials, though she stated that she was unaware whether anyone read it because it was never discussed.[2]

Defendant argues that the distribution of these materials

---

[2] Because a copy of the printout was found in the jury room following the verdict, I assume that at least one other juror read the printout.

among the jurors impinged on his Sixth Amendment right to an impartial jury. Grullon's conviction turned, at least in part, on the credibility of a government informant. Defendant argues that because the "joke" suggested to the jury that lawyers in private practice are less credible than government lawyers, the printout could reasonably have lead the jurors to believe that "the Defendant's theory was not true simply because the government prosecutors said that the Defendant was guilty and they have no reason to lie."

Once a court determines that an outside influence was brought before the jury, as here, the inquiry shifts to whether, from "an objective perspective" that "influence was likely to have affected the jury's verdict." Mahoney v. Vondergritt, 938 F.2d 1490, 1492 (1st Cir. 1991). I find that the distribution of these materials was not likely to have affected the verdict. The nexus between the materials and some aspect of the case or counsel is too attenuated to support a reasonable inference of prejudicial effect. See United States v. Hunnewell, 891 F.2d 955, 960-961 (1st Cir. 1989) ("[R]ealistically, it strains credulity to assume that [a cartoon's] mere existence irretrievably poisoned the well. The cartoon made no direct reference to the defendant or the case on trial. It did not communicate facts better hidden, inflame the senses, incite baser passions, or appeal to, say, racial or religious prejudice. The cartoon's relationship to [the defendant's] case

3

-- if one can be contrived -- seems ineffable."); see also United States v. Walsh, 75 F.3d 1, 5 (1st Cir. 1996) (upholding trial court's ruling that juror exposure to a dismissed juror's hostile views toward lawyers and politicians did not taint verdict); United States v. Boylan, 898 F.2d 230, 261 (1st Cir. 1990) (circulation of magazine article describing defense counsel as an accomplished "mob" lawyer, "while arguably exaggerated and in poor taste, did not refer to the case, the trial, the defendants, or their activities" and was therefore not prejudicial).

The materials at issue were not related to defendant's case. Lawyer jokes of this sort are commonplace, and their circulation among the jurors, while inappropriate, did not violate defendant's Sixth Amendment rights.

### ORDER

For the reasons stated, Defendant's motion for a mistrial (Docket No. 653) is **DENIED**.

*/s/ Patti B Saris*

United States District Judge